# EXHIBIT "L"

COUNTY OF LOS ANGELES - SHERIFF'S DEPARTMENT - SUPPLEMENTARY REPORT

DATE: SEPTEMBER 14, 2014                    FILE NO: 014-00067-3199-011

C:    PERSON DEAD, INCUSTODY DEATH        ACTION: ACTIVE/ADDITIONAL
                                                  INFORMATION/INVESTIGATION
V:    LYNCH, MICHAEL MW/A                 (DECEASED) CONDUCTED/POLICE REPORTS
      MANHATTAN BEACH POLICE OFFICER              AND DOCUMENTATION
      BADGE #20313                                OBTAINED
                                                  CORONER'S CASE # 2014-02933
S:    CARDENAS, FERREOL, MH/32,
      DOB: 12-16-54 (DECEASED)

D:    APRIL 25, 2014, FRIDAY
      1607 HOURS

L:    2371 ROSECRANS AVENUE
      EL SEGUNDO, CALIFORNIA 90245

*****************************************************************************

SUMMARY

On September 10, 2014, Investigators Scott Hoglund, #277112, and Louie Aguilera,
#248108, responded to the Manhattan Beach Police Department to assist their
Department with the death investigation of Suspect Ferreol Cardenas.

Investigators spoke to Manhattan Beach Police Captain Tim Hageman who briefed
them regarding the incident.  Captain Hageman provided investigators with a copy of
the first report, video/audio documentation, photographs and call records.   The
following is a summary of the incident as related by Captain Hageman:



CONFIDENTIAL DOCUMENTS                                    MBPD 00056

SEPTEMBER 14, 2014 -2- 014-00087-3199-011

Captain Hageman related on April 10, 2014, at approximately 2053 hours, Officer Michael Lynch, #20313, Unit 147, was traveling westbound in the 1800 block of Rosecrans Avenue, when a vehicle without a rear license plate made an unsafe lane change in front of Officer Lynch's marked patrol vehicle. Officer Lynch followed the vehicle and activated his vehicle's forward facing red light(s) to effect a traffic stop.

The suspect vehicle, a 2003 Chevrolet Trailblazer bearing the California license plate number 4XLD432, turned northbound on Continental Circle, El Segundo, and continued for a short distance. The suspect vehicle came to rest just south of a large parking structure that was situated within a business district. The driver and sole occupant of the Trailblazer, Suspect Ferreol Cardenas, exited the driver's door and ran northbound in the direction of the parking structure. Suspect Cardenas was holding the front of his waist area with his left hand as if he was securing a weapon. Officer Lynch gave chase on foot. Captain Hageman played for investigators the video footage from Officer Lynch's forward facing dash camera. The footage clearly depicted the aforementioned chain of events.

Captain Hageman explained after numerous failed verbal commands for Suspect Cardenas to stop during the foot pursuit, Officer Lynch deployed his Taser striking the suspect in the back. The Taser had the desired effect and Suspect Cardenas fell backwards onto the ground. He said it was the officer's perception that the suspect did not strike his head when he fell back atop the asphalt ground. Suspect Cardenas was taken into custody without further use of force.

Captain Hageman said Suspect Cardenas was found to be in possession of numerous fraudulent credit/debit cards. He was subsequently arrested for fraud related charges and outstanding arrest warrants issued in Orange County, California. Incident to the suspect's arrest, Suspect Cardenas was transported by El Segundo fire personnel to Little Company of Mary Hospital. Once at the hospital, Suspect Cardenas was admitted as a patient and released from police custody pending a future filling/arrest for the aforementioned criminal charges.

On April 15, 2014, Cardenas was medically cleared and discharged from Little Company of Mary Hospital. On April 22, 2014, Cardenas re-admitted himself to Little Company of Mary Hospital, for headaches. Three days later, April 25, 2014, at 1607 hours, Ferreol Cardenas was pronounced brain dead. The investigation was maintained by the Manhattan Beach Police Department pending the investigation by the Los Angeles County Coroner's Office.

For details regarding Officer Lynch's initial observations, foot pursuit, arrest and recovery of evidence, see Officer Lynch's first report documented under Manhattan Beach Police Department File #14-1092.



SEPTEMBER 14, 2014                    -3-              014-00067-3199-011

## AUTOPSY REPORT AND FINDINGS

On April 25, 2014, Suspect Ferreol Cardenas was first pronounced brain dead at the Intensive Care Unit (ICU) at 1600 hours, by Doctor Robert Chang.  A second confirmation of the brain death was declared on April 25, 2014, at 1607 hours, by Doctor Weijia Wang.  Cardenas' remains were harvested prior to being transported to the Coroner's Office.

On May 6, 2014, Deputy Medical Examiner Daniel Agustine, conducted a post mortem examination of Suspect Ferreol Cardenas' remains and concluded his death was attributed to blunt force head trauma.  A neuropathology evaluation concluded the subdural hemorrhage to be two weeks old and was consistent with the chain of events and the deployment of the Taser on April 10, 2014.  Medical Examiner Daniel Agustine ruled Ferreol Cardenas' death as "homicide" or "death at the hands of another."  Medical Examiner Agustine added in his report, "homicide" is a natural term that does not address the intention of any given act.

For details, refer to Coroner's protocol documented under Coroner Case #2014-02933.

## REQUEST TO INTERVIEW INVOLVED OFFICERS

On October 1, 2014, Investigator Aguilera spoke with Attorney Howard Lieberman, from the law firm of Silver, Hadden, Silver, Wexler & Levine.  Attorney Lieberman represented all officers involved in the incident.  He advised Investigator Aguilera that none of the officers involved with the arrest would be available for interviews.  Since all officers gave initial statements at the time of the arrest, and wrote supplemental reports detailing the arrest, they would not do additional interviews several months after the incident.

## TASER REPORT

Investigators reviewed the Manhattan Beach Police Department Taser Report prepared by Supervisor A. Enriquez #278 and noted the Taser's serial number as X00-308887.  The report depicts the target distance at the time of discharge was three feet and the distance between the two expended probes was twelve inches.  The nature of Cardenas' injury is documented as a 3mm skull fracture with the initial medical evaluation being completed by Doctors K.Khan and S. Hassan of the Little Company of Mary Hospital.

The "Evidence Sync" electronic device report for the X-26 Taser bearing the Serial number X00-308887 depicted log entry number 189 as being fired on April 10, 2014, at 20:55:06 hours.  The duration was documented as 5s at 23 C with a 75% battery charge.



SEPTEMBER 14, 2014                        -4-              014-00067-3199-011

For details, see the attached Taser related reports.

## VIDEO FOOTAGE FROM BODY CAMERA WORN BY OFFICER PRESGRAVES

Investigators reviewed video footage taken by Manhattan Beach Police Officer Presgraves on April 11, 2014, between 0127 and 0141 hours at Little Company of Mary Hospital.  The video consists of three short clips depicting Suspect Cardenas lying in a hospital bed.  Suspect Cardenas told Officer Presgraves he hit his head inside his car, although he appeared very disorientated and confused.  Suspect Cardenas' eyes were red/bloodshot and he appeared to have difficulty focusing both visually and with his conversation with Officer Presgraves.

## CRIME SCENE

On September 30, 2014, at approximately 1030 hours, Investigators Hoglund and Aguilera met with Manhattan Beach Lieutenant Steven Tobias at the terminus of the traffic stop, now known as 2371 Rosecrans Avenue, El Segundo.  This area is contained within a large business district and is identified as Continental Park.  The property contains numerous multi floor office buildings, large scale parking structures, small businesses and restaurants.  The property was managed by Continental Development Corporation.

Investigators Hoglund and Aguilera met with Lieutenant Tobias along the curb line in front of 2361 Rosecrans Avenue. Lieutenant Tobias told investigators the involved officers were directed by their attorneys not to make any statements in relationship to this investigation.  Lieutenant Tobias did not have firsthand information as to the path of travel the suspect and officer took from the location of the traffic stop, but he walked investigators through the portion he was aware of.

Lieutenant Tobias explained the traffic stop occurred on the east/west brick paver style roadway that ran parallel to 2361 Rosecrans Avenue.  The roadway led to a multi-unit parking structure that was controlled by an electric arm.  The address above the entrance to the parking garage depicted "2371."  Lieutenant Tobias walked investigators to the end of the roadway and further east along the exterior edge of the south end of the parking structure.  An exterior concrete walkway weaved through a grass courtyard area lined with trees, bushes and a few scattered lunch tables.  The walkway and grass area were situated between the parking structure and the multi-floor office building identified as 2381 Rosecrans Avenue.  The walkway continued north east and ended at an asphalt fire lane that ran in a northwesterly direction along the back, north side, of the aforementioned parking structure.  The asphalt roadway provided space for one vehicle to travel in each direction.  The fire lane butted the parking structure to the south and a 6 foot fence to the north.  Lieutenant Tobias said he believed the suspect was Tased somewhere on the asphalt fire lane, but he could not be specific as to the exact location.



CONFIDENTIAL DOCUMENTS                                MBPD 00059

SEPTEMBER 14, 2014                    -5-              014-00067-3199-011

FIS Cynthia Fortier, #288293, from the Los Angeles County Sheriff's Department Crime Lab, Latent Prints Section, met investigators at the scene.  She photographed the area and obtained measurements as directed by Investigators Hoglund and Aguilera.  For further details on the actions of FIS Fortier, refer to her supplemental report and photographs documented under this same file number.

Investigator Hoglund met with Senior Property Manager Esther Sullins at her office located within the development at 2041 Rosecrans Avenue.  Mrs. Sullins provided Investigator Hoglund with a site map depicting the development.  The map depicts the area where this incident occurred and will remain a permanent document in this file.

Mrs. Sullins added the only surveillance cameras in the area of 2371 Rosecrans Avenue, were positioned near the loading dock on the northwest corner of 2361 Rosecrans Avenue.  Mrs. Sullins advised Investigator Hoglund video footage is only stored for 30-45 days and that surveillance footage for April 10, 2014, was no longer available.

<u>DASH CAMERA FOOTAGE OF OFFICER LYNCH'S PATROL VEHICLE</u>

Investigators reviewed Officer Lynch's dash camera footage and noted the Chevrolet Trail Blazer bared paper plates in violation of 5200(a)CVC and completed three rapid lane changes from the #1 lane of westbound Rosecrans Avenue to the #4 lane of westbound Rosecrans Avenue, in violation of 22107CVC.  Suspect Cardenas used his vehicle's signals appropriately.  Officer Lynch activated his patrol vehicle's overhead red light to conduct a traffic stop.  Suspect Cardenas turned northbound on Continental Circle, which led to a large business district.  Officer Lynch followed the Trail Blazer for a short distance until coming to rest at the dead end of a drive that led to a multi-level parking structure.

Suspect Cardenas immediately exited the driver's door of the Chevrolet Trail Blazer, grabbed hold of his front waist area with his left hand and ran in an easterly direction toward the parking structure.  Officer Lynch immediately gave chase on foot.  Suspect Cardenas' left hand remained positioned at his front waistband while he ran out of view of the dash camera footage.

Officer Lynch gave the following verbal commands in a loud and clear manner during the foot pursuit and arrest that spanned approximately one minute:

- "Get on the ground you are going to get fucking shot!"
- "Get on the ground!"
- "Going to get tased bro!"
- "Get on the fucking ground!"
- "Get on the ground now!"



CONFIDENTIAL DOCUMENTS

SEPTEMBER 14, 2014                    -6-                    014-00067-3199-011

- "Get on the ground!"
- "Get on ground!" (muffled)

**Time frame of incident:** Suspect Cardenas' Chevrolet Trail Blazer first came into view making a lane change in front of Officer Lynch on Rosecrans Avenue at 2053:20 hours. Suspect Cardenas was in-custody after fleeing on foot and being Tased at approximately 2055:00 hours.

## DASH CAMERA FOOTAGE FOR ASSISTING PATROL UNITS

On September 30, 2014, Lieutenant Tobias provided Investigators Hoglund and Aguilera with dash camera footage obtained from units that responded to Officer Lynch's request for back-up. The footage from each of the five dash cameras depicted the officer's emergency response and arrival at 2361 Rosecrans Avenue. The video footage did not depict Suspect Ferreol Cardenas, nor any portion of the incident involving the traffic stop, foot pursuit, arrest and/or medical treatment of the suspect.

- Officer Nick Braasch - Unit #149
- Officer Brandon Muzatko - Unit #153
- Officer Tony Presgraves - Unit#155
- Officer Andrew Enriquez - Unit #398
- Officer Taylor Klosowski - Unit #154

The dash camera footage for the above listed patrol units will remain a permanent record in this file.

## COURT ORDER FOR FERREOL CARDENAS MEDICAL RECORDS

On October 15, 2014, Investigator Aguilera authored a Court Order for the Medical records of Suspect Ferreol Cardenas, requesting all medical records between the dates of April 10, 2014 to May 2, 2014. The Court Order was presented to, and signed by the Honorable Judge Olivia Rosales of the Norwalk Superior Court.

On November 4, 2014, Investigators received the Medical Records from Little Company of Mary Hospital. The disc, which contains over 700 pages of documentation will remain a permanent part of the Investigative file.

## EL SEGUNDO FIRE DEPARTMENT - PARAMEDIC RICK TOWNE

On February 26, 2015, Investigators Hoglund and Aguilera interviewed Paramedic Rick Towne at El Segundo Fire Station #1. The interview was audio recorded and the following is a summary of the interview.



SEPTEMBER 14, 2014        -7-        014-00067-3199-011

Paramedic Rick Town stated on April 10, 2014, he and his partner Kevin Heronema responded to the 2300 block of Rosecrans Avenue, El Segundo, in response to a call for service regarding a suspect that had been tased by Manhattan Beach police officers. Upon their arrival they located approximately ten Manhattan Beach police officers and the suspect, who was lying on the asphalt just outside of a parking structure. One of the officers on scene advised them that the suspect had been tased, fell to his knees, attempted to get up again, was delivered energy a second time, and fell back onto his knees. The officer(s) told Paramedic Towne the suspect never struck his head or lost consciousness.

The suspect, identified by a photograph, was lying on his back and was slightly propped up by one elbow. He was handcuffed behind his back and initially answered questions concerning his name and birthdate. Paramedic Towne said after answering the initial questions regarding name and birthdate, the suspect changed his demeanor and failed to answer any other questions and/or make any additional statements.

During the initial assessment and exam, Paramedic Towne did not observe or note any visible injuries, nor did the suspect complain of pain or any injuries. He did not recall seeing the taser darts in the suspect, but explained he was assigned to documenting the information for the report. Paramedic Towne said the suspect's pupils were normal, he was not disorientated, and he was tracking communications between emergency personnel as he would look at the individuals talking and shake his head in the negative at times. Paramedic Towne did not smell an alcoholic beverage emitting from his breath/person, but he could not say for sure. He added the suspect's heart rate was slightly elevated and his blood sugar was normal.

Paramedic Towne noted the suspect's status as "altered" since he failed to answer his questions and to communicate. It was his opinion that the suspect was not altered and was just exercising his right not to talk. His failure to talk, coupled with their policy of all tased suspects be transported, Suspect Cardenas was transported to Little Company of Mary Hospital. A Manhattan Beach police officer and Paramedic Kevin Heronema accompanied the suspect in the back of the ambulance.

Upon arrival at the hospital, Paramedic Towne said he was updated by his partner that there was no change. The suspect was taken into the emergency room and transferred in the hallway from their gurney to a hospital gurney. He completed his report, provided it to the nurse and they left the hospital. He estimated their time at the hospital between 15-20 minutes.

<u>EL SEGUNDO FIRE DEPARTMENT - PARAMEDIC KEVIN HERONEMA</u>

On March 6, 2015, Investigators Hoglund and Aguilera interviewed Paramedic Kevin Heronema at El Segundo Fire Station #1. The interview was audio recorded and the following is a summary of that interview.



SEPTEMBER 14, 2014                    -8-                    014-00067-3199-011

Paramedic Heronema told investigators he and his partner, Rick Town, responded to the 1800 block of Rosecrans Avenue in response to a medical aid call.  Upon arrival Paramedic Town parked their squad, Rescue #31, on the west side of the parking structure and they walked to the rear of the structure.  Paramedic Heronema said upon reaching the suspect, Ferreol Cardenas, he saw him on the ground propped up on one elbow.  The suspect was handcuffed behind his back, cooperative, non-violent and not very talkative.  He was advised by a Manhattan Beach officer that the suspect was tased and fell to his knees.  He was not advised of any other injuries or issues regarding the suspect.

Paramedic Heronema stated during his initial assessment he asked four standard question; time, place, person and purpose.  The suspect replied with his name but then became quiet and refused to talk and/or answer questions.  He believed the suspect stopped talking due to the fact he was a suspect and did not want to incriminate himself, not because of injury or medical status.  Paramedic Heronema explained the suspect's vital signs, appearance, and demeanor gave him no indication he was severely injured.  The only visible injuries he observed were minor abrasions on the suspect's knees and possible abrasions on his knuckles.  He advised the abrasions on the suspect's knees were minor and consistent with the suspect falling to knees after being tased. No injuries were observed on the suspect's face or head.

Paramedic Heronema believed the suspect understood the situation he was in as he was cooperative and gave assistance when he was lifted to his feet to walk a short distance to the gurney.  The suspect was stable on his feet, made no statements and gave no indication of severe injury.  The suspect was transported to Little Company of Mary Hospital as "altered," which is a component of failing to talk/communicate.  In addition, it is their policy to transport suspects to the emergency room for the purpose of removing taser darts.

This investigation is ongoing and additional reports are anticipated.

BY: SERGEANT SCOTT HOGLUND # 277112
    DETECTIVE LOUIE AGUILERA # 248108
    APPROVED BY: LIEUTENANT HOLLY FRANCISCO #292944
    ASSIGNED: DETECTIVE DIVISION - HOMICIDE BUREAU



CONFIDENTIAL DOCUMENTS                    MBPD 00063