1  Mildred K. O'Linn (State Bar No. 159055)
2  Tony M. Sain (State Bar No. 251626)
   **MANNING & KASS**
3  **ELLROD, RAMIREZ, TRESTER LLP**
   801 S. Figueroa St, 15th Floor
4  Los Angeles, California 90017-3012
   Telephone: (213) 624-6900
5  Facsimile: (213) 624-6999
   mko@manningllp.com; tms@manningllp.com
6  Attorneys for Defendants,
7  CITY OF MANHATTAN BEACH;
   OFFICER MICHAEL LYNCH; AND
8  OFFICER BRANDON MUZATKO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

FERREOL CARDENAS, SR., Individually, and as the Personal Representative for FERREOL CARDENAS, JR., Deceased, and ROSA CARDENAS,

              Plaintiffs,

      v.

CITY OF MANHATTAN BEACH, MANHATTAN BEACH POLICE OFFICER MICHAEL LYNCH (Serial No. 313), MANHATTAN BEACH POLICE OFFICER B. MUZATKO (Serial No. 342) and Does 1 through 10, inclusive,

              Defendants.

Case No. 2:15-CV-01469-PJW
*[Assigned For All Purposes to the Hon. Patrick J. Walsh, Magistrate Judge]*

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

*[Filed concurrently with Defendants' Motion for Summary Judgment and supporting papers]*

Hearing Date:    January 9, 2017
Time:            1:30 p.m.
Ctrm.:           23 (Spring)

Complaint Filed:    03/01/2015
Trial Date:         03/21/2017

## TO PLAINTIFFS, ALL PARTIES, AND THEIR ATTORNEYS HEREIN:

PLEASE TAKE NOTICE that – pursuant to applicable federal laws including but not limited to Federal Rules of Civil Procedure 7, 11, 16, and 56, as well as U.S. Dist. Ct., C.D. Cal. L.R. 56-1 through 56-4, and all applicable Orders of the Court – defendants CITY OF MANHATTAN BEACH ("City"); OFFICER MICHAEL LYNCH and OFFICER BRANDON MUZATKO ("Officer Defendants") (collectively

*[sidebar:]* MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

1  herein after as "Defendants") hereby submit this separate Statement of Uncontroverted

2  Facts and Conclusions of Law ("SUF") in support of Defendants' Motion for Summary

3  Judgment, or in the Alternative Partial Summary Judgment (filed concurrently

4  herewith).

5

6  DATED: December 12, 2016          **MANNING & KASS**

7                                    **ELLROD, RAMIREZ, TRESTER LLP**

8

9                                    By:  _____/s/ Tony M. Sain_____

10                                         Mildred K. O'Linn, Esq.

11                                         Tony M. Sain, Esq.

12                                    Attorneys for Defendants,
                                      CITY OF MANHATTAN BEACH;

13                                    OFFICER MICHAEL LYNCH; AND
                                      OFFICER BRANDON MUZATKO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STATEMENT OF UNCONTROVERTED FACTS

1.   **Issue 1**: The Officer Defendants are entitled to summary judgment as to plaintiffs' Excessive Force claims [Second and Sixth Causes of Action] and Wrongful Death claims [First and Third Causes of Action] because the undisputed material evidence shows that, from the perspective of a reasonable police officer under the totality of the circumstances *known to the officers* at the time and in that split-second moment, the Officer Defendants' use of non-deadly force was reasonable as a matter of law.

2.   **Issue 2**: Alternatively, the Officer Defendants are entitled to summary judgment as to plaintiffs' Wrongful Death claims [First and Third Causes of Action] because plaintiffs are unable to submit any admissible evidence to show that Officer Defendants caused the death of Ferreol Cardenas, Jr.; specifically, plaintiffs are unable to show that the Officer Defendants' conduct was the mechanism that caused decedent Cardenas's fatal skull injuries.

3.   **Issue 3**: Alternatively, the Officer Defendants are entitled to summary judgment as to plaintiffs' federal-law claims [First, Second and Third Causes of Action] on the basis of **qualified immunity** because a reasonable peace officer could have reasonably believed his conduct was lawful under the circumstances faced by the Officer Defendants.

4.   **Issue 4**: The moving party defendant City is entitled to summary judgment as to plaintiff's *Monell*/municipal liability claim [Fourth Cause of Action] because: (a) plaintiffs cannot show that a custom, practice, or policy of the defendant City (or any public entity defendant) was responsible for any alleged violation of plaintiffs' or decedent's constitutional rights; and/or (b) plaintiffs cannot show that plaintiffs or decedent suffered an underlying violation of constitutional rights.

5.   **Issue 5**: Defendants are entitled to summary judgment as to plaintiff's **punitive damages claims** because: (a) there is no evidence that any of the Officer Defendants acted with malice, oppression, fraud, or reckless disregard toward decedent

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1  Cardenas; and (b) defendant City, a public entity, cannot be liable for punitive damages

2  under the governing law.

3

4  DATED: December 12, 2016          **MANNING & KASS**

5                                    **ELLROD, RAMIREZ, TRESTER LLP**

6

7                                    By:   ____/s/ Tony M. Sain_____

8                                          Mildred K. O'Linn, Esq.

9                                          Tony M. Sain, Esq.

10                                   Attorneys for Defendants,

11                                   CITY OF MANHATTAN BEACH;
                                     OFFICER MICHAEL LYNCH; AND
                                     OFFICER BRANDON MUZATKO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF UNCONTROVERTED FACTS (Continued)**

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | 1. On April 10, 2014 at around 8:53 p.m., MBPD Ofc. Michael Lynch was on patrol, driving in the westbound No. 2 lane of the 1800 block of Rosecrans Avenue in the city of Manhattan Beach, when he first observed a brown Chevrolet Trailblazer.<br><br>*Evidence*: Lynch Dep., 52:24-54:3 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B); Dash Cam Video Recording, run time 20:53:15-20 (Appx. Evid. & Sain Decl., Ex. A). | 1. |
| 2. | 2. Ofc. Lynch observed that the Trailblazer, which was traveling in the westbound No. 1 lane of Rosecrans, did not have any license plates or any stickers on the window to indicate that it was a recently purchased vehicle, in violation of California *Vehicle Code* § 5200(a). | 2. |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | *Evidence*: Lynch Dep., 59:20-60:5 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B); Dash Cam Video Recording, run time 20:53:20-37 (Appx. Evid. & Sain Decl., Ex. A). | |
| 3. | 3.  Ofc. Lynch then observed the Trailblazer driving along the divider between the No. 1 and No. 2 lanes and make an abrupt, unsafe lane change into the No. 2 lane, less than one car length in front of Ofc. Lynch's car, and then another lane change into the No. 3 lane, in violation of California *Vehicle Code* § 22107.<br><br>*Evidence*: Lynch Dep., 63:21-25, 71:12-25, 72:16-73:2 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B); Dash Cam Video Recording, run time 20:53:20-26 (Appx. Evid. & Sain Decl., Ex. A). | 3. |
| 4. | 4.  Based on the fact that the Trailblazer | 4. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | did not have license plates and had made an unsafe lane change, Ofc. Lynch decided to make a traffic stop, activated the overhead lights on his patrol car and followed the Trailblazer into the No. 3 lane.<br><br>*Evidence*: Lynch Dep., 63:10-15, 77:1-4, 85:4-8 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B); Dash Cam Video Recording, run time 20:53:22-30 (Appx. Evid. & Sain Decl., Ex. A). | |
| 5. | 5. The Trailblazer then made a right turn on Continental Way into a business park with office buildings and then continued eastbound into a driveway leading to a parking structure for 2371 Rosecrans Avenue.<br><br>*Evidence*: Lynch Dep., 78:13-79:20, Ex. 1, MBPD Crime Report No. 14-1092 and Ex. 2, Overhead Diagram of Incident Scene (Appx. Evid & | 5. |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | Sain Decl., Ex. B); Dash Cam Video Recording, run time 20:53:38-46 (Appx. Evid. & Sain Decl., Ex. A). | |
| 6. | 6. After activating his overhead lights but before Cardenas brought his vehicle to a stop, Ofc. Lynch used his radio to advise the dispatcher that he was making a traffic stop, identified his location and the vehicle he was stopping. *Evidence*: Lynch Dep., 83:1-12 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B); Dash Cam Video Recording, run time 20:53:23-38 (Appx. Evid. & Sain Decl., Ex. A). | 6. |
| 7. | 7. The Trailblazer came to a stop at the end of the driveway, at which time the driver of the Trailblazer, later identified as decedent Ferreol Cardenas, Jr. ("Cardenas"), threw open the driver's side door, jumped out of the vehicle, moved his left hand immediately towards his | 7. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | waistband and began running eastbound along the edge of the parking structure.<br><br>*Evidence*: Lynch Dep., 95:16-96:2, Ex. 1, MBPD Crime Report No. 14-1092 and Ex. 2, Overhead Diagram of Incident Scene (Appx. Evid & Sain Decl., Ex. B); Dash Cam Video Recording, run time 20:54:02-11 (Appx. Evid. & Sain Decl., Ex. A). | |
| 8. | 8. Based on Cardenas jumping out of his car, immediately placing his left hand at his waistband and continuing to keep his left hand at his waistband as he ran away, Ofc. Lynch believed Cardenas was carrying a gun.<br><br>*Evidence*: Lynch Dep., 101:7-20 (Appx. Evid & Sain Decl., Ex. B). | 8. |
| 9. | 9. Ofc. Lynch then exited his marked patrol car and gave commands to Cardenas to the effect of "get on the ground or you're going to get shot": this was because Ofc. Lynch believed | 9. |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | Cardenas had a gun and he wanted to convey the severity of the situation to Cardenas.<br><br>*Evidence*: Lynch Dep., 99:20-23, 102:13-23 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B). | |
| 10. | 10. But Cardenas failed to comply with Ofc. Lynch's commands, and Cardenas instead continued running eastbound, curving around the parking structure, and into a fire lane behind the parking structure.<br><br>*Evidence*: Lynch Dep., 120:19-25, 130:12-21, Ex. 1, MBPD Crime Report No. 14-1092 and Ex. 2, Overhead Diagram of Incident Scene (Appx. Evid & Sain Decl., Ex. B). | 10. |
| 11. | 11. Ofc. Lynch drew his gun as he first began following Cardenas, and held it pointed toward the ground, as he ran in pursuit and continued commands for Cardenas to stop. | 11. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | *Evidence*: Lynch Dep., 103:14-18, 118:19-119:20 (Appx. Evid & Sain Decl., Ex. B). | |
| 12. | 12. After rounding the corner of the parking structure into the fire lane, Cardenas placed his right hand in front of his waistband, so that both of his hands were now at his waistband.<br><br>*Evidence*: Lynch Dep., 127:4-10 (Appx. Evid & Sain Decl., Ex. B). | 12. |
| 13. | 13. Cardenas then slowed from a run to a fast walk: at which point Ofc. Lynch holstered his gun and drew his department-issued TASER conducted energy weapon ("TASER") as he continued the foot pursuit.<br><br>*Evidence*: Lynch Dep., 133:24-134:7, 138:1-3 (Appx. Evid & Sain Decl., Ex. B). | 13. |
| 14. | 14. Ofc. Lynch warned Cardenas at least 6 times that he would use his TASER if Cardenas did not stop and get on | 14. |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | the ground: Cardenas appeared to ignore all of the officer's commands and warnings.<br><br>*Evidence*: Lynch Dep., 128:23-129:2 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B). | |
| 15. | 15.  After Ofc. Lynch closed the distance between himself and Cardenas to about 6 feet, Cardenas stopped abruptly and, with his left hand down by his side and his right hand concealed at his waistband, Cardenas abruptly turned back towards Ofc. Lynch.<br><br>*Evidence*: Lynch Dep., 132:1-21, 133:20-23, 147:14-19 (Appx. Evid & Sain Decl., Ex. B). | 15. |
| 16. | 16. Because Cardenas had jumped out of his car, immediately placed his left hand at his waistband, ran away from from Ofc. Lynch, ignored and failed to comply with Ofc. Lynch's | 16. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | commands to stop and get on the ground, subsequently placed both hands in front of his waistband in an apparent attempt to transition to his dominant hand, refused to respond to Ofc. Lynch's commands, and now appeared to be beginning to turn and face the officer withhis right hand concealed at his waistband, in that split-second moment, Ofc. Lynch believed that Cardenas was about to assault Ofc. Lynch with a weapon.

*Evidence*: Lynch Dep., 134:22-135:15, 142:2-6 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B). | |
| 17. | 17. Because Ofc. Lynch believed in that split-second moment that Cardenas presented an immediate threat of death or serious bodily injury to himself and others in the nearby area, in self-defense, Ofc. Lynch deployed his TASER device, firing 2 darts at Cardenas. | 17. |

DEFS.' STATEMENT OF UNCONTRAVERTED MATERIAL FACTS (S.U.F.)

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | *Evidence*: Lynch Dep., 134:22-135:15, 142:2-6, 146:14-148:20 and Ex. 1, MBPD Crime Report No. 14-1092 (Appx. Evid & Sain Decl., Ex. B). | |
| 18. | 18. Pursuant to his training, Ofc. Lynch pointed the TASER at Cardenas' back, above the beltline, so that one dart struck between Cardenas' shoulder blades and the other in his lower back.<br><br>*Evidence*: Lynch Dep., 140:25-141:17, 144:25-145:10 (Appx. Evid & Sain Decl., Ex. B). | 18. |
| 19. | 19. After being struck by the TASER darts, Cardenas' upper body stiffened, and then he fell down, landing first on his rear end, then falling backwards toward his left so that his left shoulder blade made contact with the ground, followed by the rest of his back. | 19. |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

**DEFS.' STATEMENT OF UNCONTRAVERTED MATERIAL FACTS (S.U.F.)**

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---------|-------------------------------------------------------------|----------------------------------------------------------------|
|         | *Evidence*: Lynch Dep., 144:3-9, 150:13-152:6 (Appx. Evid & Sain Decl., Ex. B). |  |
| 20. | 20.  Cardenas' head did not make contact with the ground after he was struck by the TASER darts.<br><br>*Evidence*: Lynch Dep., 152:7-9 (Appx. Evid & Sain Decl., Ex. B). | 20. |
| 21. | 21. Immediately after landing on his back, Cardenas sat up, brought his knees toward his chest, planted his feet on the ground and rested his hands on his knees.<br><br>*Evidence*: Lynch Dep., 155:6-22 (Appx. Evid & Sain Decl., Ex. B). | 21. |
| 22. | 22. A few minutes later, Ofc. Bryan Muzatko arrived at the scene, and together, Ofcs. Lynch and Muzatko placed Cardenas on his stomach, handcuffed, and searched him.<br><br>*Evidence*: Lynch Dep., 161:20- | 22. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | 162:21, 170:2-6 (Appx. Evid & Sain Decl., Ex. B). | |
| 23. | 23. Neither Cardenas' head or face ever struck the ground during this encounter.<br><br>*Evidence*: Lynch Dep., 166:6-10, 172:16-23 (Appx. Evid & Sain Decl., Ex. B). | 23. |
| 24. | 24. Ofc. Lynch never struck, punch or kicked Cardenas at anytime during this encounter, and never saw anyone strike, punch or kick Cardenas.<br><br>*Evidence*: Lynch Dep., 164:25-165:4, 177:20-178:2 (Appx. Evid & Sain Decl., Ex. B). | 24. |
| 25. | 25. Ofc. Lynch observed Cardenas' face after handcuffing him, and did not see any bruising, bleeding, scrapes, abrasions or any other signs of injuries.<br><br>*Evidence*: Lynch Dep., 177:9-19, 181:15-20 (Appx. Evid & Sain Decl., | 25. |

**DEFS.' STATEMENT OF UNCONTRAVERTED MATERIAL FACTS (S.U.F.)**

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. B). | |
| 26. | 26. However, the fire department was notified because MBPD's standard procedure was to get medical treatment for anyone who has been Tased. *Evidence*: Lynch Dep., 178:4-11 (Appx. Evid & Sain Decl., Ex. B). | 26. |
| 27. | 27.No witness to the incident reports seeing any officer or person strike, punch, or kick Cardenas at any time on the incident date. *Evidence*: Lynch Dep., 164:25-165:4, 177:20-178:2 (Appx. Evid & Sain Decl., Ex. B); Heronema Dep., 74:17-24 (Appx. Evid & Sain Decl., Ex. E); Towne Dep., 92:17-93:4 (Appx. Evid & Sain Decl., Ex. F). | 27. |
| 28. | 28. Paramedics arrived at the scene and transported Cardenas to the Little Company of Mary Medical Center ("LCMMC") in Torrance, accompanied by Ofc. Muzatko. | 28. |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | *Evidence*: Muzatko Dep., 66:9-19. (Appx. Evid & Sain Decl., Ex. C). | |
| 29. | 29. While Cardenas was in LCMMC, he advised Ofc. Anthony Presgraves that he had been in a car accident and hit his head in his car.<br><br>*Evidence*: Presgraves Dep., 41:12-42:2, 44:23-45:9 (Appx. Evid & Sain Decl., Ex. D); County of Los Angeles Sheriff's Department Supplemental Report at MBPD 00059 (Appx. Evid & Sain Decl., Ex. L). | 29. |
| 30. | 30. Cardenas was discharged on April 15, 2014 when LCMMC doctors concluded that the neurosurgeon did not recommend surgery and had cleared Cardenas for discharge, with a recommendation to repeat a brain scan in 7 to 10 days.<br><br>*Evidence*: Medical Records from LCMMC at 1055-1056 (Appx. Evid | 30. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | & Sain Decl., Ex. M). | |
| 31. | 31.  On April 22, 2014, 12 days after the subject incident, Cardenas checked himself back in to LCMMC complaining of severe headaches over the past 16 days (*e.g.*, since April 6, 2014) which had been getting worse.<br><br>*Evidence*: Medical Records from LCMMC at 924 (Appx. Evid & Sain Decl., Ex. M); Chavez Dep., 19:16-21, 27:12-31:11, 32:10-13 (Appx. Evid & Sain Decl., Ex. G). | 31. |
| 32. | 32. On April 25, 2014, Cardenas was declared brain dead.<br><br>*Evidence*: Medical Records from LCMMC at 30 (Appx. Evid & Sain Decl., Ex. M). | 32. |
| 33. | 33. The Los Angeles County Department of Coroner's investigation and autopsy revealed that the cause of Cardenas' death was | 33. |

**DEFS.' STATEMENT OF UNCONTRAVERTED MATERIAL FACTS (S.U.F.)**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | blunt force head trauma.<br><br>*Evidence*: Augustine Dep., 98:2-18 and Ex. 1, Coroner's Autopsy Report at MBPD 00169 (Appx. Evid & Sain Decl., Ex. H). | |
| 34. | 34. Based on his review of Ofc. Lynch's report, Coroner Investigator Brian Kim's report, Cardenas's medical records and his autopsy, medical examiner J. Daniel Augustine, M.D., was unable to determine, to a reasonable degree of medical certainty, what the mechanism of Cardenas' death was; that is, he was unable to determine to a reasonable degree of medical certainty what caused the blunt force head trauma.<br><br>*Evidence*: Augustine Dep., 70:24-71:10, 95:3-17 (Appx. Evid & Sain Decl., Ex. H). | 34. |
| 35. | 35. Dr. Augustine was unable to determine to a reasonable degree of medical certainty what object or | 35. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | surface struck Cardenas' head and caused the blunt force head trauma or when Cardenas received the blunt force head trauma; thus, Dr. Augustine was unable to exclude any causes of the blunt force head trauma other than a post-TASER fall to the ground with a head strike.<br><br>*Evidence*: Augustine Dep., 95:19-23, 96:4-8, 96:9-98:1 (Appx. Evid & Sain Decl., Ex. H). | |
| 36. | 36. Dr. Augustine testified that headaches, which Cardenas reported suffering from beginning April 6, 2016, or 4 days before the subject incident, are symptoms of blunt force head trauma and could indicate that Cardenas received the blunt force head trauma before the subject incident.<br><br>*Evidence*: Augustine Dep., 78:23-79:14, 86:15-25 (Appx. Evid & Sain Decl., Ex. H); Medical Records from | 36. |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
— Attorneys at Law —

DEFS.' STATEMENT OF UNCONTRAVERTED MATERIAL FACTS (S.U.F.)

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | LCMMC at 924 (Appx. Evid & Sain Decl., Ex. M). | |
| 37. | 37. Dr. Augustine testified that there was no evidence that Cardenas had been hit, kicked, or struck with a baton or other object.<br><br>*Evidence*: Augustine Dep., 81:1-10 (Appx. Evid & Sain Decl., Ex. H). | 37. |
| 38. | 38. On the incident date, neither of the paramedics observed any signs of injury or head trauma for Cardenas, and no paramedic or other known incident witness observed any evidence that Cardenas had been punched, kicked, or struck with any blows or objects.<br><br>*Evidence*: Lynch Dep., 164:25-165:4, 177:9-178:2 (Appx. Evid & Sain Decl., Ex. B); Heronema Dep., 74:25-75:24 (Appx. Evid & Sain Decl., Ex. E); Towne Dep., 93:5-94:10 (Appx. Evid & Sain Decl., Ex. F); Augustine Dep., 73:22-74:4, 81:1- | 38. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| | 10 (Appx. Evid & Sain Decl., Ex. H). | |
| 39. | 39. Investigator Kim also examined Cardenas' body in May 2014 and he saw no evidence that Cardenas had been punched, kicked, or struck with any blows or objects.<br><br>*Evidence*: Kim Dep., 65:18-68:8 75:2-7 (Appx. Evid & Sain Decl., Ex. I); Augustine Dep., 73:22-74:4, 81:1-10 (Appx. Evid & Sain Decl., Ex. H). | 39. |
| 40. | 40.  Dr. Cho Lwin, a consulting neuropathologist who examined Cardenas' brain, was also unable to determine, to a reasonable degree of medical certainty, what the mechanism of Cardenas' death was; that is, he was unable to determine to a reasonable degree of medical certainty what caused the blunt force head trauma.<br><br>*Evidence*: Lwin Dep., 85:9-12, 103:24-104:3, 104:24-105:7 (Appx. Evid & Sain Decl., Ex. J). | 40. |

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|---|
| 41. | 41. There is no *admissible* evidence showing that the mechanism of Cardenas' death-inducing head injuries resulted from any conduct of the Officer Defendants.<br><br>*Evidence*: Plaintiff's Responses to Defendant City of Manhattan Beach's Request for Admissions, Set One, Responses to Request Nos. 67 and 69 (Appx. Evid & Sain Decl., Ex. N). | 41. |
| 42. | 42. There is no evidence that MBPD has any custom or practice of using unconstitutional force so as to result in violation of decedent's or plaintiffs' constitutional rights.<br><br>*Evidence*: Manhattan Beach Police Department Policy Manual, MBPD 00209-00229 (Appx. Evid & Sain Decl., Ex. O). | 42. |
| 43. | 43.  MBPD has express policies that authorize officers to use deadly force only when, under the totality of the circumstances, from the perspective | 43. |

**DEFS.' STATEMENT OF UNCONTRAVERTED MATERIAL FACTS (S.U.F.)**

| SUF NO. | MOVING PARTY'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---------|---------------------------------------------------------------|----------------------------------------------------------------|
|         | of a reasonable peace officer, it is objectively reasonable for the officer to believe that there is an immediate threat of death or serious bodily injury to the officer or other persons.  *Evidence*: Manhattan Beach Police Department Policy Manual, MBPD 00209-00229 (Appx. Evid & Sain Decl., Ex. O). |                                                                |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

## STATEMENT OF CONCLUSIONS OF LAW

I.      The Officer Defendants are entitled to summary judgment as to plaintiff's Excessive Force claims [Second and Sixth Causes of Action] and Wrongful Death claim [First and Third Cause of Action] because the undisputed material evidence shows that, from the perspective of a reasonable police officer under the totality of the circumstances *known to the officers*, the Officer Defendants' use of non-deadly force was reasonable as a matter of law.

II.     The Officer Defendants are entitled to summary judgment as to plaintiffs' Wrongful Death claims [First and Third Causes of Action] because plaintiffs are unable to submit any admissible evidence to show that Officer Defendants caused the death of Ferreol Cardenas, Jr.; specifically, plaintiffs are unable to show that the Officer Defendants' conduct was the mechanism that caused decedent Cardenas's fatal skull injuries.

III.    The Officer Defendants are entitled to summary judgment as to plaintiffs' federal-law claims [First, Second and Third Causes of Action] on the basis of **qualified immunity** because a reasonable peace officer could have reasonably believed his conduct was lawful under the circumstances faced by the Officer Defendants.

IV.     The moving party defendant City is entitled to summary judgment as to plaintiff's *Monell*/municipal liability claim [Fourth Cause of Action] because: (a) plaintiffs cannot show that a custom, practice, or policy of the defendant City (or any public entity defendant) was responsible for any alleged violation of plaintiffs' or decedent's constitutional rights; and/or (b) plaintiffs cannot show that plaintiffs or decedent suffered an underlying violation of constitutional rights.

V.      Defendants are entitled to summary judgment as to plaintiff's **punitive damages claims** because: (a) there is no evidence that any of the Officer Defendants acted with malice, oppression, fraud, or reckless disregard toward decedent Cardenas; and (b) defendant City, a public entity, cannot be liable for punitive

1  damages under the governing law.